LAKEHEAD CONSTRUCTORS, INC. v.
ROGER SHEEHY COMPANY.
PREMIER ELECTRIC CONSTRUCTION COMPANY,
THIRD-PARTY DEFENDANT.

229 N. W. 2d 514.

May 16, 1975—No. 45058.

176

*Harper, Eaton, Gustafson & Wilson* and *Earl Gustafson,* for appellant.

*Bloedel, Nelson, Slade, Volstad & Hawkinson* and *Philip John Bloedel,* for respondent.

Heard before Todd, Scott, and Knutson, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

Plaintiff, Lakehead Constructors, Inc., appeals from judgment entered pursuant to a directed verdict denying its claim for damages to an air compressor, which for purposes of this appeal is deemed to have been bailed to defendant, Roger Sheehy Company. Plaintiff claims the issue of the bailee's negligence should have been determined by a jury and not determined by the court. We affirm.

The facts pertinent to the disposition of the issue raised on this appeal may be briefly summarized. Plaintiff leased an air compressor to third-party defendant, Premier Electric Construction Company, the prime contractor for installation of new lighting on one of the runways at the Duluth airport. Defendant was a subcontractor of Premier. The work being performed was on runway 27, which runs in a generally east-west direction, and the construction area was on the easterly end of the runway. The easterly 1,000 feet of this runway was an overrun area which was not used for landing or taking off, but for emergency use. Because of the construction, the overrun area was temporarily extended an additional 700 feet to the west as a safety measure. To permit the installation, ditches had been dug across the overrun area to accommodate underground wiring necessary for pur-

poses of the remodeled lighting. At the close of work on October 22, 1969, plaintiff's air compressor was left in the center of the overrun area approximately 750 to 950 feet east of the new touchdown area of runway 27.

The compressor stood some 4 feet tall and was located between two piles of dirt, each of which was at least as high as the compressor. At about 6:50 p. m., after darkness had descended, two Connecticut Air National Guard F-102 jets approached the Duluth airport for landing. Instructions were given to the lead plane, and the record indicates that they were also heard by the second plane. As part of the instructions, the tower advised the pilots that the first 700 feet of the runway was closed. The first plane approached and landed safely. The second plane, however, struck the piles of dirt and crashed into the air compressor, destroying it except for limited salvage value. The plane finally came to rest after veering to the south. No one was injured in the crash.

On March 30, 1972, almost 2½ years later, plaintiff brought this action against defendant, who impleaded Premier Electric Construction Company as a third-party defendant. The record discloses that because of the delay in commencement of the action, defendant was unable to join the United States Government as a third-party defendant.

At the close of plaintiff's case, defendant and third-party defendant moved for a directed verdict, which was taken under advisement. Defendant then presented its case, after which the parties again renewed their motion for a directed verdict. Defendant's motion was granted by the trial court. In so ruling, the trial court assumed that a bailment had been established and that defendant had the burden of going forward with evidence to establish that it was not negligent. This is consistent with our holding in Central Mutual Ins. Co. v. Whetstone, 249 Minn. 334, 336, 81 N. W. 2d 849, 851 (1957):

"It is settled law in this state that, where the bailee's liability depends upon the issue of his negligence, and the bailor has

shown that the property involved was delivered to the bailee and has not been returned pursuant to the bailment agreement, or has been returned in a damaged condition, the bailee has the burden of showing that the loss or damage was not caused by his negligence."

The trial court found there was no evidence which would support a jury's finding of negligence on the part of defendant Roger Sheehy Company and accordingly directed the jury to return a verdict for defendant.

The standard to be used in determining whether a verdict should be directed by the trial court, while often worded in different ways, is essentially whether different persons could reasonably come to different conclusions after viewing the evidence as a whole in the light most favorable to the nonmoving party.

"We have held that the test to be applied in determining whether a verdict should be directed by the trial court is whether it is plain from the evidence submitted that all men can draw but one conclusion. Thus, in a negligence action the test for determining whether a verdict should be directed is whether men could differ as to the question of negligence on the part of the defendant or contributory negligence on the part of the plaintiff." Carlson v. Rand, 275 Minn. 272, 276, 146 N. W. 2d 190, 193 (1966).

We have carefully reviewed the record and exhibits in this case and find that, considering the evidence as a whole, the decision of the trial court was correct under the applicable standards. Accordingly, we affirm.

Affirmed.